**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

SOLYMAN MURRAY

        **Plaintiff,**

        **v.**                **CIVIL ACTION NO:** 3:22-cv-102
                              **JURY DEMAND**

**KNOX COUNTY, TENNESSEE;**
**TOM SPANGLER,** Sheriff of Knox County,
Tennessee in his official and individual capacity;
**JEREMY MONTGOMERY,** Officer of the Knox
County Sheriff's Office in his official and individual capacity;

        **Defendants.**

**<u>FIRST AMENDED COMPLAINT</u>**

Plaintiff files this First Amended Complaint and alleges as follows:

**INTRODUCTION**

1.  This is a civil rights action for violations of the Due Process Clause of the Fourteenth
    Amendment and the Fourth Amendment to the United States Constitution arising from
    the wrongful shooting of Plaintiff, Solyman Murray, by Knox County Sheriff's Officer
    Jeremy Montgomery on or about February 9, 2021. This civil rights action is brought
    under 42 U.S.C. § 1983 against Defendant Jeremy Montgomery and Tom Spangler in
    their individual capacities, and against Defendant Knox County, Tennessee. This action
    seeks a declaratory judgment and injunctive relief, damages, and costs of litigation
    against Defendants. This action also raises a state law claims for common law
    negligence and battery.

2.  As described below, Plaintiff alleges that pursuant to their unconstitutional policies,
    practices and customs, Defendants Montgomery, Spangler and Knox County violated his

Fourth Amendment right to be free of unlawful searches and seizures, which led to his wrongful seizure and serious bodily injury in violation of his rights under the Fourth Amendment. Plaintiff also alleges that Defendants Montgomery and Spangler are negligent, that Defendant Montgomery unlawfully battered him and that Defendant Knox County is liable for this battery.

## JURISDICTION

3. This action arises under the Fourth and Fourteenth Amendment to the United States Constitution. This court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, and additionally under 28 U.S.C. § 2201 and 2202.

4. Venue is proper in the Eastern District of Tennessee under 28 U.S.C. § 1391(b)(2) because the events complained of occurred in this District, and because the Defendants reside in this District. Venue is also proper in the Knoxville Division of this Court, because the events complained of occurred in Knox County.

5. Plaintiff's claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the Fourteenth Amendment to the U.S. Constitution and the laws of the United States

6. This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, as well as nominal and compensatory damages, against all Defendants.

7. Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

8. Upon information and belief, Plaintiff alleges that the individual Defendants acted as described herein with the intent to injure, vex, annoy, and harass Plaintiff, and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights with the intention of causing Plaintiff injury and depriving him of his constitutional rights.

9. As a result of the foregoing, Plaintiff seeks compensatory and punitive damages against Defendant Montgomery and compensatory damages against all Defendants.

## THE PARTIES

10. Plaintiff, Solyman Murray, is and has been at all times relevant to this litigation a citizen of the United States, a resident of Tennessee, and over the age of 18;

11. Defendant Jeremy Montgomery was at all times relevant to this litigation, a police officer in the Knox County Sheriff's Office. Defendant Montgomery unlawfully seized plaintiff without probable cause or even reasonable suspicion and then unlawfully seized, arrested, battered and imprisoned plaintiff by shooting plaintiff and then unlawfully handcuffing plaintiff. Defendant Montgomery is subject to the supervision, instruction, direction, and training of Defendants Spangler and Knox County, Tennessee. Defendant Jeremy Montgomery is sued in his official and individual capacities.

12. Defendant KNOX COUNTY, TENNESSEE is a municipality formed under the laws of the State of Tennessee. The Knox County Sheriff's Office is a municipal agency or department of Defendant Knox County, Tennessee. The official policies relating to the use of force, searches and seizures at issue in this case were the moving force behind the constitutional violations alleged herein.

13. Defendant Tom Spangler, is, and has been at all times relevant to this litigation, the Sheriff of Knox County, Tennessee. As the final policymaker for the Knox County

Sheriff's Office (KCSO), Defendant Spangler establishes, maintains, and enforces the KCSO's policies and procedures and is responsible for the KCSO's functions, operations and training and supervision of officers who interpret and implement the KCSO's policies, practices and customs. Defendant Tom Spangler is sued in his official and individual capacities.

14. All of the Defendants' acts and omissions alleged herein were taken under color of state law and within the scope of their official duties as employees and officers of Knox County, the Knox County Sheriff's Office and violated Plaintiff's clearly established constitutional rights. Defendants Knox County and Spangler established, maintained, and enforced the policies at issue in this action, which Defendant Montgomery implemented, and all of them continue to do so to this day.

15. All Defendants are Tennessee residents.


## STATUTORY AND CONSTITUTIONAL FRAMEWORK

16. The Civil Rights Act of 1871 as amended, 42 U.S.C. § 1983, provides a cause of action where the plaintiff can establish (1) the deprivation of right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.

17. The Supreme Court has stated that: "The Civil Rights Act of 1871, along with the Fourteenth Amendment it was enacted to enforce, were crucial ingredients in the basic alteration of our federal system accomplished during the Reconstruction Era. During that time, the Federal Government was clearly established as a guarantor of the basic federal rights of individuals against incursions by state power." *Patsy v. Board of Regents of Fla.*, 457 US 496, 503 (1982).

18. The purpose of the Civil Rights Act is to "interpose the federal courts between the States and the people, as guardians of the people's federal rights — to protect the people from unconstitutional action under color of state law." *Id.* (internal citations and quotation marks omitted).

19. It is, and was at all times relevant to this litigation, clearly established under the Fourth Amendment that the police violate a citizen's right to be free of unlawful searches and seizures when they arrest a person without probable cause that the person has or is a about to commit a crime and when they use excessive force to carry out the seizure;

20. A municipality is liable for its failure to train its police officers in their duties under the Fourth Amendment;

21. A municipality is liable under § 1983 for violations of the Fourth Amendment, even though those actions were not taken pursuant to an overarching policy.

**FACTS**

22. On February 9, 2021, Officer Murray responded to a call from a woman named Shawna Bates who stated that she saw several people enter a neighboring house and that the people did not belong there.

23. Officer Murray went to the house, drew his weapon, knocked on the door, identified himself as with the KCSO and ordered the occupants to come to the door.

24. Three white men emerged from the house.

25. Officer Murray pointed his gun at the men, ordered them to the ground while holding them at gunpoint and the men were handcuffed.

26. At that time, Shawna Bates informed Defendant Montgomery that one of the men was her brother.

5

27. Shawna Bates told Defendant Montgomery that her brother owned the house.

28. Shawna Bates explained that her brother had been in the hospital and that she did not know he was at home.

29. After Mr. Bates identified one of the men as her brother and the homeowner, Defendant Montgomery put away his gun, and the men were uncuffed and allowed to stand up.

30. One of the men stated that there were still people in the house. When asked why the people would not come out, the homeowner answered that he did not know, but that he thought they were scared to do so.

31. There was a car with Massachusetts tags in the driveway of the house. When the police ran the tag on the car, nothing came back indicating any unlawful activity;

32. Having identified the homeowner, Defendant Montgomery left the house, but parked across the street where he was joined by other officers.

33. Defendant Montgomery then returned to the house, contacted Shawna Bates and told her that he needed additional information for his report.

34. Having spoken with Ms. Bates, Defendant Montgomery entered his vehicle and began to leave the scene, when he was stopped by Shawna Bates who informed him that someone exited the house through a window and ran. The person was identified as wearing orange pants.

35. Defendant Montgomery then drove across the street to a strip mall and asked a bystander if the bystander had seen anyone run through there. The bystander replied in the affirmative.

36. Despite having no facts that any crime had been committed, Defendant Montgomery asked the bystander where the person went and then called for other officers stating, "Pull down here to Archers BBQ. They are saying they ran into this CBD ship."

37. Having called additional Officers, Defendant Montgomery got out of his vehicle and stood at the entrance of the CBD shop.

38. Another officer named Sellers then arrived and Defendant Montgomery and Officer Sellers entered the CBD shop with Defendant Montgomery leading. As they were entering the CBD shop, Defendant Montgomery said to Officer Sellers, "They're going out the back. They're running out the back."

39. Plaintiff was in the CBD shop and when the officers entered the shop, Plaintiff went through a door toward the back and shut the door behind him.

40. At that time, the officers had no facts to support either that a crime had been committed or that Plaintiff had committed it.

41. Despite a complete absence of reasonable suspicion, not to mention probable cause, Defendant Montgomery decided to effectuate an arrest of Plaintiff.

42. Defendant Montgomery shouted, "Police! Don't move!" Defendant Montgomery then drew his weapon and pointed it at the closed door.

43. Plaintiff opened the door and saw the gun pointed directly at him. Plaintiff responded with an explicative expressing shock and fear and instinctively closed the door.

44. Officer Sellers and Defendant Montgomery pointed their weapons at the closed door and with weapon still drawn, Defendant Montgomery opened the door. Plaintiff, behind the door and now seeing the officers with their weapons pointed at him, raised his hands and began yelling, "Don't shoot."

45. Plaintiff immediately fell to the floor in surrender and disarmed himself by sliding a firearm along the floor towards the officers.

46. Plaintiff's firearm came to rest at Defendant Montgomery's feet.

47. After Plaintiff had disarmed himself, Defendant Montgomery shot plaintiff in the right arm.

48. At the time that Defendant Montgomery shot Plaintiff, Defendant Montgomery did not even have reasonable suspicion much less probable cause that any crime had been committed or that Plaintiff had committed it.

49. At the time that Defendant Montgomery shot Plaintiff, Plaintiff posed no reasonable threat of danger to Defendant Montgomery or any other person.

50. After being shot, Plaintiff was screaming in pain. Nevertheless, Defendant Montgomery wrenched Plaintiff's injured arm behind Plaintiff's back and handcuffed him in that position.

51. Plaintiff was screaming in pain, but Defendant Montgomery kept Plaintiff's injured arm handcuffed behind Plaintiff's back until emergency medical personnel arrived. Only then did Defendant Montgomery handcuff Plaintiff to a gurney.

52. Later on, Officer Sellers asked another officer what Plaintiff had done. The officer responded, "I don't know."

53. Upon information and belief, Defendant Montgomery instructed, authorized, tacitly acquiesced in, or approved officers to seize and/or arrest plaintiff without reasonable suspicion much less probable cause and to assist Defendant Montgomery in effectuating the unlawful seizure and/or arrest through the use of deadly force when Plaintiff clearly posed no threat. Upon information and belief, Defendant Montgomery informed

Defendants Knox County and Spangler of his decision to use deadly force against Plaintiff when Defendant Montgomery lacked even reasonable suspicion that Plaintiff had committed a crime and when Plaintiff posed no threat or alternatively, Defendants Knox County and Spangler learned of Defendant Montgomery's actions and failed to correct them.

54. Upon information and belief, Defendant Montgomery took no action at all to ensure that his conduct conformed to the requirements of the Fourth Amendment and sought no guidance or training on his obligations to refrain from illegal seizures of persons and the use of excessive force. Upon information and belief, although Defendant Montgomery had access to legal counsel, he failed to seek the advice of counsel on his Fourth Amendment obligations.

55. All defendants acted affirmatively to unlawfully seize Plaintiff, participated in one another's affirmative acts resulting in the unlawful seizure, arrest and use of force against Plaintiff, and omitted to obtain a warrant, which they were required to do and all of which caused Plaintiff to be seriously injured and to experience great physical and psychological pain, suffering and distress. Defendants Knox County and Spangler failed to institute constitutionally adequate policies to ensure compliance with the Fourth Amendment, which they were required to do and which resulted in Plaintiff's wrongful seizure and serious physical injuries.

56. Defendants Knox County and Spangler acted to promulgate the unconstitutional policies, practices and procedures at issue and were culpably inactive in their training, supervision and control of officers, including Defendant Montgomery. Defendants Knox County and Spangler acquiesced in the constitutional deprivations of illegal seizures and excessive

use of force and their conduct showed a reckless or callous indifference to the rights of others.

57. Upon information and belief, Defendants Knox County and Spangler, through their policies, set in motion a series of acts by officers and/or knowingly refused to terminate a series of acts by officers, which they knew or reasonably should have known would cause officers to inflict a constitutional injury. These acts include a pattern and practice of excessive use of force and illegal seizures by officers.

58. Defendant Spangler had a long history with the KCSO prior to becoming Sheriff and was aware of multiple Fourth Amendment violations such that the need for training of officers was clear, but upon becoming sheriff took no action to require or implement such training. Complaints of Fourth Amendment violations include without limitation the following:

A. On February 10, 2021, a prisoner guarded by the Knox County Sheriff's Office alleged that he was unlawfully tasered for refusing to speak with KCSO detectives. Defendant Spangler had personal knowledge of this complaint, because he was at one time a defendant in the resulting litigation (*Atkins v. Spanger*, No. 3:21-CV-075-KAC-DCP (E.D. Tenn);

B. Similarly, in *Easterly v. Thomas*, No. No. 3:20-CV-00065-JRG-HBG, this court declined to dismiss allegations of a litany of Fourth Amendment violations by the KCSO, including excessive force. Defendant Spangler had personal knowledge of these allegations, because the complaint alleged the inadequacy of Defendant Spangler's policies and training of officers on the Fourth Amendment;

C. The Knox County District Attorney's office has requested the TBI to investigate the shooting of a male pedestrian by a KCSO officer on or about February 16, 2022;

D. Upon information and belief, in the past five years, Defendants Knox County and Spangler have been made aware of at least 100 complaints of Fourth Amendment violations and during this time, Defendant Knox County has paid in excess of $100,000 to resolve complaints of Fourth Amendment violations by KCSO officers, including complaints of excessive force and unlawful seizures, regardless of whether those complaints resulted in litigation;

59. Defendants Knox County and Spangler adopted policies, customs, practices, and procedures that allow Fourth Amendment violations, including unlawful seizures and the excessive use of force, as demonstrated by inadequate policies, ineffective training, virtually non-existent accountability measures, poor supervision, scant data collection measures, distorted enforcement priorities, an ineffective complaint system, and dramatic departures from proper law enforcement and investigative procedures.

60. Defendants Knox County and Spangler were aware that these deficiencies create a risk of unconstitutional seizures and use of force, yet failed to remedy the situation.

61. Upon information and belief, Defendants Knox County and Spangler gave permission, consent and acquiesced in the unconstitutional use of force and seizure of persons, including in Plaintiff's case, and were on notice of such unlawful seizures and uses of force or at a minimum of the need to prevent unlawful seizures and the unlawful use of force. Rather than remedy the situation, Defendants consciously and with deliberate indifference chose a policy that virtually guaranteed that unlawful seizures and use of force would occur and continue.

62. Because of the policies of Defendants Knox County and Spangler, Defendant Montgomery believed his actions in unlawfully seizing, arresting and using force against Plaintiff would not be monitored or investigated and, indeed, would be tolerated and approved.

63. Defendants Knox County and Spangler had a policy of inadequate training and, given the potential for harm to the public resulting from unlawful seizures and use of force, the need to adequately train staff on their duties under the Fourth Amendment was so obvious and the inadequacy so likely to result in a violation of constitutional rights that Defendants can be said to have been deliberately indifferent to the need. Indeed, upon information and belief, Defendants Knox County and Spangler provided no training at all to police, including Defendant Montgomery, on the requirements of the Fourth Amendment.

64. Defendants Knox County and Spangler's unconstitutional policies, practices, and customs are ongoing, and were the moving force behind the injuries Plaintiff suffered as a direct result of the constitutional violations. If Plaintiff is again investigated, arrested, imprisoned or tried within the jurisdiction of Knox County, Plaintiff will again be subject to these unconstitutional policies and practices. As such, Plaintiff has no adequate remedy at law.

65. Due to all Defendants' actions, Plaintiff has suffered damages, including, but not limited to: unlawful arrest; unlawful seizure; unlawful imprisonment; loss of freedom; serious bodily injury; disability; severe emotional distress; shame and humiliation; severe physical pain, suffering and discomfort; medical expenses; physical therapy and rehabilitation expenses; persistent fear; loss of consortium with friends and family; the

diversion of Plaintiff's resources; the loss of income and potential income; and the inability to live without fear of repetition of the events of his unlawful seizure and shooting.

66. The accommodation of the Fourth Amendment rights of Plaintiff with respect to seizures and use of force will not have any significant impact on Knox County or its police, for reasons including without limitation that the courts have already mandated that Defendants are to refrain from unlawful seizures and the excessive use of force. In other words, Defendants would be asked to do only that which the law already requires them to do.

67. Defendants' actions and inactions were and are motivated by ill motive and intent, and were and are all committed under color of law with reckless indifference to Plaintiff's rights.

68. Defendants Knox County and Spangler are responsible for or personally participated in creating and implementing these unconstitutional policies, practices, and customs, or for ratifying or adopting them. Further, Defendants Knox County and Spangler are responsible for training and supervising the police whose conduct has injured Plaintiff and will continue to injure Plaintiff should he again be subject to arrest, investigation, detention or trial within the jurisdiction of Knox County.

69. Plaintiff is entitled to declaratory relief as well as injunctive relief prohibiting Defendants from unlawful seizures and use of force and directing defendants to establish, at least, minimum procedures to ensure that unlawful seizures and use of force do not occur.

70. Defendants Knox County and Spangler have a formal and informal policy, which allows the police to use excessive force and engage in unlawful seizures.

71. Defendants Knox County and Spangler were aware of the need for a constitutional seizure and use of force policy, as their obligation to comply with the Fourth Amendment was clearly established at the time Plaintiff was unlawfully seized and shot;

72. Defendants Knox County and Spangler were deliberately indifferent to Plaintiff's constitutional rights, because they were each aware of the obvious substantial risk that unlawful seizures and the use of force were occurring and would continue to do so, but chose a policy of inadequate training of officers in the preservation of Fourth Amendment rights.

73. Defendants Knox County and Spangler had a specific job to do relating to polices ensuring that Fourth Amendment rights were protected, but failed to do it, which led to Plaintiff's seizure and shooting.

74. The need for procedures to ensure compliance with the Fourth Amendment was plainly obvious to Defendants Knox County and Spangler, who were deliberately indifferent to the need. Defendants Knox County and Spangler chose a policy of inadequate or non-existent training of officers even in the face of recurring Fourth Amendment violations. Defendants were aware that they had an affirmative duty to comply with the Fourth Amendment, and yet with deliberate indifference implicitly failed to train their officers on the requirements of the Fourth Amendment and failed to provide adequate discipline to officers who violated the Fourth Amendment. Plaintiff's unlawful seizure and shooting was a highly probable consequence of Defendants Knox County and Spangler's failure to act.

75. Defendant Knox County and Spangler's inadequate policies, procedures and training on the Fourth Amendment, virtually guaranteed that constitutional violations would occur.

Defendants were aware that their police had an affirmative duty to comply with the Fourth Amendment, but chose policies and a training regime that were so inadequate as to be nonexistent and that virtually guaranteed that unlawful seizures and the use of force would occur;

76. Defendants Knox County and Spangler chose and implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.

77. Defendants Knox County and Spangler's policies subjected Plaintiff to an unreasonable risk of unlawful seizure and force due to Defendant's deliberate indifference to Plaintiff's Fourth Amendment rights. Defendants were aware that police had an affirmative obligation to comply with the Fourth Amendment and yet consciously adopted policies, procedures and customs that virtually guaranteed that violations of Plaintiff's Fourth Amendment rights would occur.

78. On information and belief, Defendants, through their employees and agents, unlawfully seized and/or used force in Plaintiff's case and others similarly situated, pursuant to their policy, practice, and custom, of unlawful seizures and use of force, as well as inadequate training on Fourth Amendment rights. Defendants' conduct constitutes a pattern of violations of individuals' Fourth Amendment rights.

79. Defendants' policies and practices, along with Defendants' implementation of the same, have been used for unlawful seizures and use of force in Plaintiff's case and upon information and belief have been and are being used for unlawful use of force and seizures in cases similarly situated. Were Plaintiff to again be investigated, arrested or

tried within the jurisdiction of Knox County, Plaintiff would again be subject to these policies and procedures.

80. All Defendants' actions have violated, and are reasonably expected in the future to violate Plaintiff's constitutional rights.

81. Plaintiff is entitled to injunctive relief prohibiting Defendants from unlawfully seizing and using force against Plaintiff and any person similarly situated and from denying Plaintiff and others due process due to the deprivation of Fourth Amendment rights

82. Defendant Spangler is an official policymaker, who is responsible for and personally participated in the creation and implementation of these unconstitutional policies, practices, and customs, and for ratifying and adopting them. Further, Defendant Spangler is responsible for training and supervising Defendant Montgomery, and the other officers involved in the incident, whose conduct has injured Plaintiff. On information and belief, Defendant made conscious choices not to conduct sufficient training on the Fourth Amendment requirements governing seizures, including use of force and when a person may be seized and arrested. Defendant Spangler, as the ultimate decision-maker, failed to implement a constitutionally sufficient training regime and encouraged the lack of training and supervision over KCSO employees. Defendant's failure to conduct adequate training on the constitutional constraints on seizures and use of force, was so deficient as to be plainly insufficient and reckless, and consequently, it was a certainty that KCSO officers would violate Plaintiff's and other individuals' rights. Moreover, on information and belief, Defendant failed to conduct adequate continuing education on the constitutional requirements of officers' duties.

83. Defendant Knox County and Spangler's oversight of their police was similarly plainly insufficient and permitted widespread and systematic violations of law. Defendants failed altogether to supervise the constitutional seizure of persons, and their choice to oversee and supervise officers in seizure of such persons would have prevented the violation of Plaintiff's rights.

84. Defendants Knox County and Spangler were aware or should have been aware of the constitutional requirements of the prevention of unlawful seizures and use of force, the need to have a policy to ensure compliance with the Fourth Amendment and to train their police in the constitutional use of force and when a seizure is lawful and that a pattern of unconstitutional violations would occur as a result of the failure to have such policies or conduct such training, and they nonetheless intentionally chose a training and supervision program that was so ineffective as to be absent, if it was present at all.

85. Consequently, Defendants Knox County and Spangler acted with reckless disregard for and were deliberately indifferent to Plaintiff's constitutional rights.

86. The KCSO's policies, established, maintained, and enforced by Defendants Knox County and Spangler, as well as the Defendants' practice and custom unlawful seizures and use of force, permitted investigative officers to arbitrarily and unconstitutionally violate Plaintiff's Fourth Amendment rights by unlawfully seizing and shooting Plaintiff.

87. Punitive damages are warranted against Defendant Montgomery because his conduct was motivated by evil motive or intent, involved reckless or callous indifference to Plaintiff's federally protected rights, intentionally violated federal law, and involved ill-will and malice.

## FIRST CLAIM FOR RELIEF
### Violation of the Fourth Amendment to the United States Constitution:
### Unlawful Seizure
### (42 U.S.C. § 1983)

88. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.

89. Plaintiff has the constitutional right to be free from unlawful seizures.

90. Defendants Knox County and Spangler have the obligation to establish constitutionally adequate policies for the protection of Fourth Amendment rights and to train their officers in that regard.

91. Once he undertook to order Plaintiff not to move and drew his weapon, Defendant Montgomery seized Plaintiff. When Defendant Montgomery entered the closed door with his gun pointed at Plaintiff, the seizure became an arrest, if it were not so before. The unlawful seizure continued when Defendant Montgomery shot Plaintiff, wrenched Plaintiff's injured arm behind Plaintiff's back, placed handcuffs on Plaintiff and kept Plaintiff in that position until EMS arrived;

92. Defendant Montgomery had no warrant to seize plaintiff and did not have reasonable suspicion much less probable cause that either a crime had been committed or that Plaintiff had committed it. Therefore, Defendant Montgomery's actions deprived Plaintiff of his clearly established Fourth Amendment rights;

93. Defendants Knox County and Spangler's formal and informal policies, customs, and practices, are the moving force behind the violation of Plaintiff's rights, as is their failure to adequately train their officers.

94. Defendants Knox County and Spangler's policies, on their face and as applied to Plaintiff, violate Plaintiff's clearly established constitutional rights, because they virtually assure that Fourth Amendment violations will occur.

18

**SECOND CLAIM FOR RELIEF**
**Violation of the Fourth Amendment:**
**Excessive Force**
**(42 U.S.C. § 1983)**

95. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs

96. A Fourth Amendment violation occurs when an officer uses excessive force to seize a person. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). The use of lethal force is excessive unless an officer has probable cause to believe a person poses an immediate threat of serious physical harm to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

97. Defendant Montgomery's use of any force against Plaintiff was excessive, because Plaintiff was lying on the ground, had his hands up, was asking the officers not to shoot him and had obviously disarmed himself.

98. Defendant Montgomery used lethal force against Plaintiff, when Defendant Montgomery fired his gun at Plaintiff. Defendant Montgomery's use of lethal force was excessive because Plaintiff did not pose an immediate threat of serious physical harm to Defendant Montgomery or anyone else.

99. Defendant Montgomery's excessive use of force resulted in serious bodily injury to Plaintiff;

100. Defendant Montgomery's excessive use of force against Plaintiff continued when Defendant Montgomery wrenched Plaintiff's injured arm behind Plaintiff's back, handcuffed Plaintiff and kept Plaintiff in that position until EMS arrived;

101. Defendants Knox County and Spangler's formal and informal policies, customs, and practices, are the moving force behind the violation of Plaintiff's rights, as is their failure to adequately train their officers.

102. Defendant Knox County and Spangler's policies, on their face and as applied to Plaintiff, violate Plaintiff's clearly established constitutional rights, because they virtually assure that Fourth Amendment violations will occur.

## FOURTH CLAIM FOR RELIEF
## COMMON LAW BATTERY

103. Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.

104. A County is liable for the non-negligent acts of its deputies under T.C.A. § 8-8-302. *Barbieri v. Knox Cnty.,* No. 3:15-CV-146-TAV-CCS, 2016 WL 154098*, ,* at *5 ("While immune under the GTLA, Knox County can be liable for its deputies' alleged non-negligent tort actions under section 8-8-302.");

105. Defendant Montgomery is liable to Plaintiff for the common law tort of battery, because Defendant Montgomery used excessive force against Plaintiff. *Griffin v. Hardwick*, 604 F.3d 949, 956 (6th Cir. 2010) ("Where a plaintiff asserts a battery claim under Tennessee law that arises out of the same use of force as her § 1983 excessive-force claim, the analysis is the same for both causes of action.");

106. Pursuant to T.C.A. § 8-8-302, Defendant Knox County is liable for Defendant Montgomery's battery of plaintiff;

## FIFTH CLAIM FOR RELIEF
## COMMON LAW NEGLIGENCE

107. Defendants Spangler and Montgomery owed a duty to Plaintiff to act with ordinary care and prudence so as not to cause him harm or injury;

108. The actions and inactions of Defendants Spangler and Montgomery were negligent and/or reckless;

109. Defendants owed a duty to Plaintiff to use due care in fulfilling duties as police officers and to ensure that their conduct conformed to applicable laws, policies, procedures and generally accepted police standards. Defendants failed to use due care and were negligent, grossly negligent, reckless, willful and wanton in all of the foregoing particulars;

110. Pursuant to the Governmental Tort Liability Act and T.C.A. § 8-8-302, these Defendants also owed Plaintiff a duty of care to be free from excessive force and to protect him from injury;

111. Defendant Montgomery owed a duty to plaintiff not to unlawfully seize Plaintiff in violation of the Fourth Amendment and not to use excessive force against plaintiff;

112. Defendant Montgomery breached his duty to Plaintiff by unlawfully seizing and using force against Plaintiff;

113. Defendant Spangler had a duty to promulgate policies that ensured Plaintiff and others similarly situated were guaranteed protections provided for by the United States Constitution.

114. Defendant Spangler failed to promulgate such constitutional policies and to adequately supervise and train Defendant Montgomery.

Case 3:22-cv-00102-KAC-DCP   Document 11   Filed 05/11/22   Page 21 of 23   PageID #: 97

115. Defendant Spangler's failure to adequately supervise and train Defendant Montgomery and Defendant Spangler's failure to promulgate constitutional policies directly and proximately caused Plaintiff to suffer serious harm.

116. Defendants Montgomery and Spangler breached their duty of care toward Plaintiff as set forth herein;

117. As a direct and proximate result of Defendants' conduct, as alleged above, and other undiscovered negligent conduct, Plaintiff was caused to suffer severe injury, pain and suffering;

118. The foregoing acts of Defendants Montgomery and Spangler directly and proximately caused the injuries to Plaintiff, entitling Plaintiff to recover damages from these defendants;

## RELIEF REQUESTED

WHEREFORE, the Plaintiff requests relief as follows:

1. A declaration that Defendants violated and continue to violate the constitution;

2. A declaration that Defendants' policies, practices, and customs violate the Constitution;

3. Ordering Defendants to immediately comply with the Constitution and to adopt constitutional policies for compliance with the Fourth Amendment;

4. An award of nominal, compensatory, and presumed damages for each violation of Plaintiff's constitutional rights;

5. An award of punitive damages against Defendant Montgomery;

6. Awarding Plaintiff his attorney and expert witness fees and all other costs of litigation pursuant to 42 U.S.C. § 1988, and under other applicable law;

7. Pre-judgment and post-judgment interest;

8. The right to conform the pleadings to the proof and evidence presented at trial;

9. A jury trial on all issues properly triable before a jury; and

10. Such other relief as the Court deems just and equitable.

Respectfully submitted this the 11th day of May, 2022.

Respectfully submitted,

/s/ T.Scott Jones
T. Scott Jones, TN BPR No. 014628
Gena Lewis, TN BPR No. 025020
BANKS & JONES
2125 Middlebrook Pike
Knoxville, TN 37921
(865) 546-2141

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Tennessee by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. I further certify that all of the participants in this case are registered CM/ECF users.

BANKS AND JONES

/s/T. Scott Jones
T. Scott Jones, Esq.

*Attorney for Plaintiff*